# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AIMEE ROSANNE MERRITT,**

        **Plaintiff,**

**v.**                                       **Case No:   6:14-cv-914-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

---

# MEMORANDUM OF DECISION

Aimee Rosanne Merritt (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits.   Doc. No. 1.   Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) assigning little weight to Drs. Segundo Imbert's and Howard Buchoff's opinions; 2) finding her testimony concerning her pain and limitations not credible; and 3) relying on the vocational expert's ("VE") testimony in finding that she can perform other jobs in the national economy.   Doc. No. 19 at 13-18, 32-34, 36-38. Claimant requests that the matter be reversed for an award of benefits, or, in the alternative, remanded for further proceedings.   *Id*. at 42.   For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.       STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.   ANALYSIS.

### A.  Weight of Physician Opinions.

Claimant challenges the weight assigned to Drs. Imbert's and Buchoff's opinions. Doc. No. 19 at 13-18. In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c). A treating physician's opinion must be given "substantial or considerable weight," unless "good cause" is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2)

(giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence).   "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

The opinion of an examining physician, which is not entitled to any particular deference, is generally entitled to more weight than the opinion of a non-examining physician.   *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians).   While "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and the ALJ articulates his or her reasoning for rejecting the opinion(s).   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (internal quotations omitted).

### 1. Dr. Imbert.

The record reveals that Claimant has a history of depression and anxiety.   On April 11, 2011, Claimant began treating with Dr. Imbert, a psychiatrist.   R. 365-68.   On that date, Dr. Imbert conducted a mental status examination, noting:

> Her hygiene and grooming is good.   Her eye contact is good.   She is cooperative with the interview process.   Her speech is clear. Her rate and tone is within normal limits.   She is alert and oriented. Her mood is anxious.   Her affect is congruent with her mood.   Her though processes are organized, logical, and goal directed.   She denies any current suicidal and homicidal ideations.   She denies any previous suicide attempt.   She denies any auditory and visual hallucinations.   There is no evidence of delusions or paranoia. Recent and remote memory is intact.   Concentration and attention is fair.   Fund of knowledge is average.   Insight and judgment is

> good in relation to her illness.  The patient's strengths include a
> good support system.    The patient's weaknesses include her
> chronic mental illness.

R. 367.   Dr. Imbert treated Claimant on several occasions after April 11, 2011.   R. 362-68, 458-

59, 556.   Specifically, on May 4, 2011 and November 8, 2011, Dr. Imbert conducted mental status

examinations, which were relatively consistent with Claimant's April 11, 2011 mental status

examination, but did note a depressed mood and anxiety.   R. 362-63.   In light of the foregoing,

Dr. Imbert qualifies as a treating physician.   20 C.F.R. § 404.1502.

On September 20, 2012, Dr. Imbert completed a "Psychiatric Medical Source Statement"

(the "Mental Assessment").   R. 557-58.   In it, Dr. Imbert opines that Claimant has marked

limitations in activities of daily living, maintaining social functioning, and maintaining

concentration, persistence or pace.   R. 558.   Dr. Imbert further opines that Claimant is disabled,

but assigned her a Global Assessment Functioning ("GAF") score of sixty (60).   R. 557-58.[1]

At step two of the sequential evaluation process, the ALJ found Claimant suffers from the

following severe impairments: fibromyalgia syndrome, depression and anxiety.   R. 23.   At step

four of the evaluation process, the ALJ determined that Claimant has the RFC to perform

"sedentary work" as defined by 20 C.F.R. § 404.1567(a), with the following limitations:

> [T]he claimant can lift and carry 10 pounds occasionally; sit for 8
> hours in an 8-hour workday (stand at the workstation for once an
> hour briefly); stand and walk for 2 hours in an 8-hour workday, but
> not all at once; and, bilateral handling and fingering frequently.
> Due to the claimant's mental impairments, she can perform simple
> 1-5 step[] tasks (that could be learned through a simple on the job
> demonstration or within 30 days of training); generally work
> independently at her own workstation with no more than occasional
> interactions with co-workers and supervisors and none with the

---

[1] GAF scores are used to report an individual's overall level of functioning.   Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision, 2000).   A GAF score of 51-60 reflects: **"Moderate symptoms (e.g.,** flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning (e.g.,** few friends, conflicts with peers or co-workers)." *Id.* at 34 (emphasis in original).

general public beyond superficial; and she must be allowed to write
down instructions for reference.

R. 26.   The ALJ's decision contains a detailed and accurate discussion of Dr. Imbert's treatment

notes and Mental Assessment.   R. 32-35.   Ultimately, the ALJ assigned "little weight" to the

Mental Assessment, explaining:

> Dr. Imbert['s] opinions, . . . are not supported by the objective
> medical evidence.   The medical records do not show the severity of
> his medical source statement.   Progress notes fail to indicate the
> extreme limitations noted in [the Mental Assessment] or any
> limitations at all.   Mental status examinations were essentially
> normal.   Furthermore, Dr. Imbert opined that the claimant is
> disabled, but rated the claimant's GAF of 60, which is consistent
> with no more than moderate mental limitations per the Diagnostic
> and Statistical Manual of Mental Disorders, Fourth Edition (DSM-
> IV).

R. 35 (internal citations omitted).   Thus, the ALJ assigned little weight to Dr. Imbert's Mental

Assessment essentially because it is inconsistent with his own treatment notes and internally

inconsistent.   *Id*.   Claimant maintains that Dr. Imbert's Mental Assessment is entitled to

substantial or considerable weight given his treatment history with Claimant.   Doc. No. 19 at 15-

16.   Further, Claimant maintains that the reasons articulated by the ALJ for assigning little weight

to the Mental Assessment are "not exactly accurate", thus suggesting that the ALJ's determination

to assign little weight to the Mental Assessment is not supported by substantial evidence.   *Id*.

The ALJ articulated good cause to assign the Mental Assessment little weight.   First, the

ALJ noted that Dr. Imbert's mental status examinations, which she characterized as "essentially

normal," are inconsistent with the severe limitations in the Mental Assessment.   R. 35 (citing R.

362-68, 458-60, 556).   The ALJ's characterization of the mental status examinations as essentially

normal is not artful.   As the record clearly demonstrates, and the ALJ found at step two of the

sequential evaluation process, the Claimant suffers from severe impairments of depression and

anxiety.   R. 23, 362-68, 458-59, 556.   Nevertheless, the thrust of the ALJ's reasoning – i.e., that Claimant's mental status examinations are inconsistent with the severe limitations in the Mental Assessment – is accurate, and thus is good cause to assign the Mental Assessment less than substantial or considerable weight.   *Compare* R. 362-68, 458-59, 556 *with* R. 557-58.   Second, the ALJ noted that the Mental Assessment is internally inconsistent given Dr. Imbert's opinion that Claimant has a GAF of 60.   R. 35 (citing R. 558).   As previously mentioned, a GAF score of 60 is indicative of moderate limitations in social and/or occupational functioning.   *See supra* n.1. As such, Claimant's GAF score is inconsistent with marked limitations in the Mental Assessment.[2] For these reasons, the Court finds that the ALJ articulated good cause to assign Dr. Imbert's Mental Assessment little weight, and that her reasons for doing so are supported by substantial evidence.

### 2.  Dr. Buchoff.

The record reveals that Claimant's neurologist, Dr. Refaat El-Said, referred her to Dr. Buchoff, a rheumatologist, for a consultative examination concerning pain in her muscles and joints.   R. 482.   On May 22, 2012, Dr. Buchoff examined Claimant.   *Id.*   Dr. Buchoff's examination consisted of reviewing Claimant's past medical history, family history and social history, which Claimant provided via a "Patient Information form."   *Id.*   Dr. Buchoff also performed a physical examination, which was unremarkable with the exception of tenderness of the arms, neck, upper back and buttocks.   R. 482-83.   On July 3, 2012, Dr. Buchoff performed a subsequent examination of Claimant.   R. 491.   Dr. Buchoff performed a physical examination of

---

[2] The Court recognizes the questionable value GAF scores have in determining an individual's mental functional capacity.   *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009).   Nevertheless, the GAF score assigned by Dr. Imbert is significant since the GAF score he assigned to Claimant is not consistent with marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, which he opined to.

Claimant, which was unremarkable with the exception of tenderness of the arms.   *Id*.   Dr. Buchoff concluded that Claimant suffers from "moderately symptomatic" fibromyalgia.   *Id*.

On July 5, 2012, Dr. Buchoff completed a Fibromyalgia Residual Functional Capacity questionnaire ("Physical Assessment").   R. 493-97.   In it, Dr. Buchoff opines that Claimant is incapable of performing "low stress" jobs.   R. 494.   Dr. Buchoff opines that Claimant can never lift or carry any weight less than ten (10) pounds.   R. 495.   Dr. Buchoff opines that Claimant can sit for five (5) minutes at a time, and sit for less than two (2) hours in an eight-hour work day.   R. 496.   Dr. Buchoff opines that these same time limitations apply to Claimant's ability to stand and walk.   *Id*.   Dr. Buchoff opines that Claimant needs a job that permits her to shift positions at will.   *Id*.   Dr. Buchoff opines that Claimant can rarely twist, stoop and crouch, and never climb ladders or stairs.   R. 495.   Dr. Buchoff opines that Claimant cannot finger or handle in an eight-hour workday, and can only reach for two-percent of the time in an eight-hour workday.   *Id*.

As step four of the sequential evaluation process, the ALJ assigned the Physical Assessment "little weight" for the following reasons:

> The record shows that Dr. Buchoff initially started to treat the claimant for fibromyalgia in March 2012, and progress notes fail to indicate the extreme limitations noted in [the Physical Assessment] or any limitations at all.   Musculoskeletal examination showed only tenderness reported by claimant in the arms, neck, upper back and buttocks.   Her range of motion and muscle strength was normal in the upper and lower extremities.   Sensory and deep tendon reflexes were normal.   The claimant had a normal gait and station.   There was no trigger test performed at any office visits.   The [ALJ] finds that . . . the opinion of Dr. Buchoff is not an accurate representation of claimant's functional abilities in spite of her impairments.

R. 31-32 (internal citations omitted).[3]   Accordingly, the ALJ assigned little weight to the Physical Assessment because Dr. Buchoff's records were not consistent with the severe limitations in the Physical Assessment.   *Id.*

Claimant maintains that Dr. Buchoff is a treating physician, and, as such, the ALJ should have assigned "more weight" to the Physical Assessment, especially considering Claimant's diagnosis of fibromyalgia.   Doc. No. 19 at 16-18 (citing *Stewart v. Apfel*, No. 99-6132, 245 F.3d 793, 2000 U.S. App. Lexis 33214 (11th Cir. 2000)).   The Court disagrees for two (2) reasons. First, Dr. Buchoff is a non-treating source.   The Court recognizes that the ALJ classified Dr. Buchoff as a treating source.   R. 31.   This classification, however, is inconsistent with the record, which, as previously discussed, reveals that Claimant was referred to Dr. Buchoff by her treating neurologist for a consultation concerning her muscle and joint pain.   R. 482.   Thereafter, Dr. Buchoff examined Claimant on two (2) occasions within the span of two (2) months.   R. 482-83, 491.[4]   These facts are consistent with Dr. Buchoff being a non-treating, examining source, as opposed to a treating source.   20 C.F.R. § 404.1502.   As such, this case is distinguishable from *Stewart*, which dealt with opinions from a treating source.   *Stewart*, 2000 U.S. App. Lexis 33214, *9 (explaining that "a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader").   Further, as a non-treating, examining source, Dr. Buchoff's Physical Assessment is not entitled to any special deference or consideration.

---

[3]  The record reveals that Dr. Buchoff first examined Claimant on May 22, 2012, not March of 2012.   R. 482.   This misstatement of fact has little, if any, impact on the weight assigned to the Physical Assessment, and therefore is harmless.

[4]  There is nothing in the record indicating that Dr. Buchoff examined Claimant after July 3, 2012.

*McSwain*, 814 F.2d at 619.   Therefore, the ALJ was not required to assign any particular weight to the Physical Assessment.

Even if Dr. Buchoff is a treating source, *Stewart* does not direct a finding of reversible error.   *Stewart* is an unpublished decision, and therefore is merely persuasive authority.   *See* 11th Cir. R. 36-2.   Further, *Stewart* is distinguishable.   In *Stewart*, the ALJ assigned little weight to the treating physician's opinion because "there was no objective clinical evidence" supporting the physician's opinion concerning the limitations caused by the claimant's fibromyalgia.   *Stewart*, 2000 U.S. App. Lexis 33214, *6-7.   Here, the ALJ essentially determined that the severe limitations in the Physical Assessment were inconsistent with Dr. Buchoff's own records, which detailed largely unremarkable physical examinations and "moderately symptomatic" fibromyalgia.   R. 31-32 (citing R. 482-83, 491).   On this record, the Court finds that the ALJ articulated good cause to assign Dr. Buchoff's Physical Assessment little weight, and that her reason for doing so is supported by substantial evidence.   For these reasons, the Court finds that the ALJ did not error by assigning Dr. Buchoff's Physical Assessment little weight.

**B.  Credibility.**

Claimant argues that the ALJ failed to adequately consider her credibility.   Doc. No. 19 at 36-38.   In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.   By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).   "20

C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[5]   Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561.   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'").   A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562.   The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id*.

---

[5] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.   This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."   SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Claimant contends that the ALJ's credibility determination is encompassed in the following paragraph:

> The statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the medical history, the reports of treating and examining practitioners, the degree of medical treatment required and the claimant's own description of her activities and lifestyle, as evidenced herein.

Doc. No. 19 at 37 (citing R. 27).   Claimant argues that this "boiler plate type language" does not sufficiently articulate reasons for discrediting her testimony.   *Id*. at 37-38.

The ALJ's credibility finding was not limited to the above paragraph.   Following this paragraph, the ALJ provided a more detailed explanation as to why she found Claimant's testimony not entirely credible.   For example, the ALJ explained:

> In terms of the claimant's alleged musculoskeletal impairments, the objective findings of the examining physicians and the radiographic injuries do not support the severity of pain and limitation alleged by claimant.   The objective medical evidence included laboratory findings showing positive antinuclear antibody (ANA).   The medical record documented her treatments for complaints of symptoms associated with fibromyalgia.   Physical examinations revealed some tenderness in the arms, neck, upper back and buttocks but also negative straight leg raise test and no sensory deficits. Muscle strength and range of motion was normal on physical examination.   Grip strength and fine manipulation were normal. There was no cyanosis, clubbing, swelling or pitting edema in the extremities.   Neurological examinations were essentially normal. There was no evidence of motor deficits.   Her pain is essentially well controlled the majority of the time when she is compliant with medications.   No treating physician has advised her to refrain from performing gainful work activity.

R. 30 (citations omitted).   Additionally, the ALJ explained that the record does not support the "allegedly disabling symptoms" of Claimant's mental impairments, nor are her allegations consistent with her activities of daily living.   R. 30-31, 35.   Accordingly, the ALJ's credibility determination was not limited to boilerplate language.   Claimant does not challenge the

substantive bases the ALJ articulated in support of her credibility determination.  *See* Doc. No. 19 at 36-38.   Accordingly, the Court finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons are supported by substantial evidence.  *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

### C.  Hypothetical to VE.

Claimant contends the ALJ erred when she relied on the VE's testimony in determining that she can perform other work in the national economy.  Doc. No. 19 at 32-34.   Once the claimant proves that he or she can no longer perform his or her past relevant work, as is the case here (R. 36), the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   An ALJ may rely on the testimony of a VE in determining whether the claimant can perform other jobs in the national economy.  *Id*. at 1229-30.   The ALJ is required to pose hypothetical questions which are accurate and which include all of the claimant's functional limitations.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).   However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).   Where the ALJ relies on the VE's testimony at step five, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence.  *Pendley*, 767 F.2d at 1562 (quoting *Brenem v.*

*Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[6]   Once the Commissioner, by and through the ALJ, demonstrates the existence of other work in the economy that the claimant can perform, the burden shifts back to the claimant to prove that he or she is unable to perform the jobs identified by the VE.   *Jones*, 190 F.3d at 1228.

At the hearing, the ALJ posed a hypothetical question to the VE consistent with the ALJ's RFC determination.   *Compare* R. 26 *with* R. 79.   In response, the VE testified that such an individual would be able to perform work as an addresser, table worker, and lens inserter.   R. 79-80.   The ALJ subsequently relied on the VE's testimony in determining that Claimant, despite her impairments, could perform other work in the national economy, thus concluding that she is not disabled.   R. 36-37.

Claimant maintains the ALJ erred in two (2) respects when she relied on the VE's testimony in determining that she can perform other work in the national economy.   Doc. No. 19 at 33-34.   First, Claimant, relying on her arguments concerning the weight assigned to Drs. Imbert's and Buchoff's opinions, argues that the ALJ's hypothetical did not contain all of her limitations.   *Id*. at 33.   As previously discussed, the ALJ's decision with respect to Drs. Imbert's and Buchoff's opinions is supported by substantial evidence.   Therefore, Claimant's first argument is unavailing.

Second, Claimant maintains the VE's testimony demonstrates that an individual performing work as an addresser, table worker, or lens inserter would have to handle and finger more than two-thirds (i.e., more than frequently) of an eight-hour workday, and thus she could not perform the jobs identified by the VE.   Doc. No. 19 at 34.   The Court disagrees.   On cross-

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

examination, Claimant's representative asked the VE to describe the work an addresser, table worker, and lens inserter performs that does not require the use of their hands. R. 82-85. The VE was unable to identify every task associated with those jobs that did not require use of the hands. *Id*. However, the VE offered several examples of tasks generally associated with the jobs she identified that did not require use of the hands, such as a table worker's visual inspection of items that pass by on a conveyor and an addresser's visual inspection of addresses for accuracy. *Id*. Further, the VE testified that her testimony concerning the frequency with which an addresser, table worker and lens inserter uses their hands is consistent with the Dictionary of Occupational Titles. *Id*.[7] In light of the foregoing, the Court finds, as the ALJ did, that the VE's testimony concerning the frequency with which an addresser, table worker and lens inserter handles and fingers remained consistent throughout the hearing. R. 37. Therefore, the ALJ did not err by relying on the VE's testimony in determining that Claimant, despite her limitations, is capable of performing work in the national economy, and thus is not disabled.

**III.     CONCLUSION.**

        For the reasons stated above, it is **ORDERED** that:

        1.        The final decision of the Commissioner is **AFFIRMED**; and

        2.        The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

---

[7] There is no dispute that the jobs identified by the VE require only frequent handling and fingering. *See* Doc. No. 19; *see also* U.S. Dep't of Labor, Dictionary of Occupational Titles, 209.587-010 (rev. 4th ed. 1991), 1991 WL 671797; *Id*. at 739.687-182 (rev. 4th ed. 1991), 1991 WL 680217; *Id*. at 713.687-026 (rev. 4th ed. 1991), 1991 WL 679273.

**DONE** and **ORDERED** in Orlando, Florida on September 29, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801